# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR SANCHEZ,<br><br>       **Plaintiff**<br><br>       v.<br><br>HOMEBRIDGE FINANCIAL SERVICES, INC., a New Jersey corporation, and DOES 1 through 20, inclusive,<br><br>       **Defendant** | **CASE NO. 1:17-CV-1267 AWI EPG**<br><br>**ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND ORDER STAYING MATTER**<br><br>(Doc. No. 7) |

     This removed case from the Fresno County Superior Court is an employment discrimination suit between Plaintiff Hector Sanchez ("Sanchez") and his former employer, Defendant Homebridge Financial Services ("HFS"). Currently before the Court is HFS's motion to compel arbitration. For the reasons that follow, the Court will grant HFS's motion.

## **BACKGROUND**

     From the Complaint, Sanchez was employed by HFS from February 6, 2016 to July 10, 2017 as a branch manager. On June 15, 2017, Sanchez complained to HFS that it was unlawfully failing to pay all wages that were due him. HFS agreed to pay Sanchez all wages due by July 1, 2017, but failed to do so. Sanchez again complained to HFS about the failure to pay, and explained that HFS's conduct violated state and federal rules, regulations, and law. Shortly thereafter, HFS terminated Sanchez. On September 1, 2017, Sanchez filed this lawsuit and alleged claims under California for wrongful termination in violation of public policy, breach of contract, breach of the covenant of good faith, violation of Labor Code § 98.6, § 203, and § 1102.5.

`

## **DEFENDANT'S MOTION**

*Defendant's Argument*

HFS argues that Sanchez voluntarily entered into an arbitration agreement ("Agreement") and expressly agreed that any and all disputes arising out of or related to his employment would be resolved in binding arbitration. Each cause of action alleged is encompassed by the Agreement. The Agreement requires arbitration before JAMS and pursuant to JAMS rules. The Agreement is not unconscionable because it provides for a single neutral arbitrator, the JAMS Employment Rules permits discovery beyond "minimal discovery," requires a written decision that is subject to judicial review, permits the arbitrator to award equitable relief, damages, costs and fees, is bilateral because both parties must submit their claims to an arbitrator, and does not require the payment of any unreasonable fees, rather Sanchez is only required to pay a case management fee that is equivalent to a court filing fee. Because the claims are clearly within the enforceable Agreement, this case should be stayed or dismissed pending arbitration.

In reply, HFS argues that Sanchez has not shown unconscionability. The JAMS Comprehensive Rules contain numerous carve outs under which it is clear that the JAMS Employment Rules will apply in this arbitration, specifically either through agreement by the parties or through the conflict of law provisions of JAMS. The fees identified as part of the JAMS Comprehensive Rules will not apply, rather Sanchez will only pay a $400 fee under the JAMS Employment Rules (all other costs will be borne by HFS). Further, Sanchez has not identified a particular rule that results in an unfair circumstance, and he took six days before he signed the Agreement. Also, Sanchez does not dispute that the JAMS Employment Rules provide for sufficient discovery, and the requirement of a written decision conforms to § 9 of the Federal Arbitration Act ("FAA"). Also, the Agreement does not provide for one sided injunctive relief, rather the Agreement specifically states that "a party" may seek temporary injunctive relief.

*Plaintiff's Opposition*

Sanchez argues that Agreement is unenforceable because it is unconscionable. First, the Agreement was a form contract drafted by HFS and presented on a take or leave it basis and conditioned employment on signing the Agreement. Thus, there was a significant imbalance in

bargaining power. Second, there is unfair surprise because HFS did not provide a copy of the JAMS Comprehensive Rules, although those rules are referenced in the Agreement. These JAMS rules do not allow for dispositive motions. Further, HFS has threatened to have the arbitration occur in Los Angeles, which is expensive and inconvenient. Third, the Agreement does not call for application of the JAMS Employment Rules, rather it applies the Comprehensive Rules, and those rules only permit an exchange of information and one deposition. Thus, there is insufficient discovery permitted. Fourth, there is no judicial review permitted since the Agreement states that the arbitrator's decision is final. Fifth, the Comprehensive Rules require him to pay a filing fee, a share of the arbitrator fees, and a case management fee. These fees are significantly larger than that required to file a lawsuit. Sixth, HFS has carved out for itself the ability to sue in court for injunctive relief, but there is no such right for the Plaintiff. Finally, an unexpected forum creates financial difficulty for Plaintiff. HFS has threatened to arbitrate in Los Angeles, but any location other than Fresno is not reasonably expected and would create an unreasonable financial burden. Thus, each of these aspects of the Agreement are unconscionable, and the collective unconscionability of the Agreement as a whole should preclude arbitration.

*Relevant Contractual Provisions*[1]

In pertinent part, the Agreement provides:

[HFS] and [Sanchez] agree that all disputes and claims for which a court otherwise would be authorized by law to grant relief, in any manner, that [Sanchez] may have, now or in the future, during or after my employment with [HFS], of any and every kind or nature whatsoever with or against [HFS] . . . or any claims that [HFS] may have against me . . . shall be submitted to JAMS, Inc. ("JAMS"), to be resolved and determined through final and binding arbitration before a single neutral arbitrator and to be conducted in accordance with JAMS Comprehensive Arbitration Rules & Procedures ("Comprehensive Rules").
. . .

I agree that Claims subject to arbitration shall include but not be limited to any and all Claims arising out of or are related to the offer of employment or promotion extended by HFS, any aspect of my employment with [HFS] or the terms and conditions of that employment.

My agreement to arbitrate all claims includes any claim for bonus, vacation pay or other compensation, any termination of that employment and any Claim of discrimination, retaliation, or harassment . . . under any federal, state, local or other statutes, orders, laws, ordinances, regulations or the like, or case law, that relate to

---

[1] The Agreement is found at Pages 8 and 9 of Exhibit A to the Centeno Declaration (Doc. No. 7-2).

employment or employment practices . . . .

. . .

The arbitrator will conduct a full hearing with each party presenting evidence and being allowed to examine and cross-examine witnesses. The arbitrator will issue a written decision and has the authority to award equitable relief, damages, costs, and fees to the extent permitted by law. The fees and expenses of the arbitration shall be borne by the parties, under the schedule in the Comprehensive Rules unless otherwise awarded by the arbitrator in the final, written decision. I agree that any arbitration award rendered under this Agreement shall be final and binding and may be entered and enforced as a court judgment under applicable law. HFS and I further agree this Agreement, any arbitration under this Agreement and any arbitration award rendered shall be governed by the Federal Arbitration Act. . . . If the Associate primarily works and reside in California, the Associate consents to personal jurisdiction in California, the application of California law, and to California as the forum for any disputes arising in California.

…

This Agreement shall survive my employer-Associate relationship with [HFS] and shall apply to any covered Claim whether arising or asserted during my employment or after the termination of my employment with [HFS].

### *Legal Standard*

The FAA commands courts to "place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." <u>AT&T Mobility, LLC v. Concepcion</u>, 563 U.S. 333, 339 (2011). Agreements to arbitrate are generally valid and enforceable, but may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996). Under California law, a contract as a whole or any part thereof may be unenforceable because it was "unconscionable at the time it was made." Cal. Civ. Code § 1670.5(a); <u>Tompkins v. 23andMe, Inc.</u>, 840 F.3d 1016, 1023 (9th Cir. 2016). Under California law, the party asserting that a contractual provision is unconscionable bears the burden of proof. See <u>Poublon v. C.H. Robinson Co.</u>, 846 F.3d 1251, 1260 (9t h Cir. 2017); <u>Tompkins</u>, 840 F.3d at 1023; <u>Sanchez v. Valencia Holding Co., LLC</u>, 61 Cal.4th 899, 911 (2015). Unconscionability has "both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." <u>Sanchez</u>, 61 Cal.4th at 910; <u>see</u> <u>Poublon</u>, 846 F.3d at 1260; <u>Tompkins</u>, 840 F.3d at 1023. However, procedural and substantive unconscionability need not be present in the same degree, rather, "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." <u>Armendariz v. Foundations Health Psychare Servs., Inc.</u>, 24

`

1   Cal.4th 83, 114 (2000); see Poublon, 846 F.3d at 1260; Tompkins, 840 F.3d at 1023.  Procedural

2   unconscionability focuses on "oppression or surprise due to unequal bargaining power," and

3   generally arises from "an inequality of bargaining power that results in no real negotiation and

4   absence of meaningful choice."  Poublon, 846 F.3d at 1260.  While California courts have

5   described substantive unconscionability in numerous ways, each of the formulations point to the

6   central idea that unconscionability "is concerned not with 'a simple old-fashioned bad bargain' but

7   with terms that are 'unreasonably favorable to the more powerful party.'"  Baltazar v. Forever 21,

8   Inc., 62 Cal.4th 1237, 1244 (2016); see Poublon, 845 F.3d at 1261; Tompkins, 840 F.3d at 1023.

9       *Discussion*

10      1.   Applicable JAMS Rules

11      The parties dispute which JAMS Rules would apply to an arbitration under the Agreement.

12  HFS contends that the JAMS Employment Rules ("JER's") would apply, while Sanchez contends

13  that the Comprehensive Rules ("JCR's") would apply.  Most of the remainder of the parties'

14  respective arguments are dependent upon which set of rules would apply to the arbitration.

15      The plain language of the Agreement specifies that the JCR's will apply to the arbitration.

16  Sanchez is correct that there is no mention whatsoever of the JER's.  Therefore, under the

17  Agreement, the JCR's govern.

18      Although HFS's motion states that the Agreement calls for application of the JER's, that is

19  plainly contradicted by the express language of the Agreement.  The real basis of HFS's position

20  that the JER's will govern are provisions from the JCR's and JER's themselves.  In their motion,

21  HFS cites JER Rule 1(a), which reads:  "The JAMS [Employment Rules] govern binding

22  arbitration of disputes or claims that are administered by JAMS and in which the Parties agree to

23  use these Rules, or in the absences of such agreement, the disputes or claims are employment-

24  related, unless other Rules are prescribed."  JER 1(a).  However, as stated above, the parties did

25  not specify application of the JER's, rather they expressly specified use of the JCR's.  That

26  express reference and agreement to use the JCR's is key and dispositive, as the parties themselves

27  have prescribed another Rule – the JCR's.  Similarly, JCR 1(a) states that the Comprehensive

28  Rules will govern if the parties agree.  See JCR 1(a).  Although this case is clearly an employment

5

1    related case and application of the JER's makes sense, that is not what was agreed to, rather the

2    JCR's were agreed.  Because the parties expressly agreed to application of the JCR's, both JCR

3    1(a) and JER 1(a) dictate that the arbitration would be governed by the JCR's.

4        Therefore, the Court will analyze the remainder of this motion with the understanding that

5    the JCR's will govern.[2]

6        2.    Unconscionability

7            a.    Procedural Unconscionability

8        Sanchez argues that he was forced to sign the Agreement as a condition of employment

9    and because the Agreement was an adhesion contract, it is procedurally unconscionable

10       A contract of adhesion  is a "standardized contract, which, imposed and drafted by the

11   party of superior bargaining strength, relegates to the subscribing party only the opportunity to

12   adhere to the contract or reject it."  Poublon, 846 F.3d at 1261; Armendariz, 24 Cal.4th at 113.

13   Where employment is dependent upon the acceptance of an adhesion contract, there is procedural

14   unconscionability.  Ajamian v. CantorCO2e, L.P., 203 Cal.App.4th 771, 796 (2012).

15       Here, there is no dispute that Sanchez's employment depended on him accepting and

16   signing the Agreement.  Sanchez could either accept the Agreement and be employed by HFS, or

17   he could reject it and be unemployed.  Therefore the Agreement is a contract of adhesion and there

18   is procedural unconscionability.  See Poublon, 846 F.3d at 1261; Baltazar, 62 Cal.4th at 1245;

19   Armendariz, 24 Cal.4th at 113; Ajamian, 203 Cal.App.4t hat 796.

20       Nevertheless, "if an employee must sign a non-negotiable employment agreement as a

21   condition of employment, but 'there is no other indication of oppression or surprise,' then 'the

22   agreement will be enforceable unless the degree of substantive unconscionability is high.'"

23   _____

24   [2] As part of its motion, HFS stated that the Agreement requires the parties to use the JER's, which is false since the
     Agreement does not even mention the JER's.  Further, the footnote cited in support of this assertion purports to quote
     JER 1(a) as follows:  "The [JER's] govern binding Arbitration of disputes or claims that are administered by JAMS

25   and in which the Parties agree to use these Rules or, in the absence of such agreement, the disputes or claims are
     employment related[.]"  Doc. No. 7-1 at 3 n.11.  A review of JER 1(a) shows that the omitted portion of the quote is:

26   "unless other Rules are prescribed."  The Court has cited the full JER 1(a) in its analysis above and reached the
     conclusion that the parties themselves prescribed a different "Rule" because they expressly agreed to use the JCR's.

27   The omission of this key language is extremely disturbing.  At best there is an error in judgment in drafting this part of
     the motion, at worst there is an attempt to deceive the Court and hide damaging and dispositive language.  In either
     event, any further "creative editing" will not be tolerated, but will be viewed as bad faith and the basis for sanctions

28   under Rule 11 and/or the Court's inherent authority.

`

1   Poublon, 846 F.3d at 1261 (quoting Serpa v. Cal. Sur. Investigations, Inc., 215 Cal.App.4th 695,

2   704 (2013)); Ajamian, 203 Cal.App.4th at 796.  Sanchez argues that there is improper surprise

3   because he was not provided a copy of the JCR's, even though the JCR's will govern any

4   arbitration.  However, incorporation by reference of documents or rules alone does not affect

5   procedural unconscionability.  Poublon, 846 F.3d at 1262.  "[C]ourts will more closely scrutinize

6   the substantive unconscionability of terms that were "artfully hidden" by the simple expedient of

7   incorporating them by reference rather than including them in or attaching them to the arbitration

8   agreement."  Baltazar, 62 Cal.4th at 1246.  Although Sanchez identifies several aspects of the

9   JCR's that he contends demonstrate surprise or prejudice, he does so only briefly.  Sanchez

10   expands on those points while discussing substantive unconscionability.  Per *Baltazar*, the

11   particular aspects of the JCR's identified by Sanchez are appropriately analyzed under substantive

12   unconscionability.  Therefore, Sanchez has not demonstrated sufficient "surprise" for purposes of

13   procedural unconscionability.

14         Because Sanchez has not sufficiently identified other aspects of procedural

15   unconscionability, the Court concludes that Agreement is procedurally unconscionable because it

16   is an employment adhesion contract, but the degree of unconscionability is low.  See Poublon, 846

17   F.3d at 1263; Serpa, 215 Cal.App.4th at 704; Ajamian, 203 Cal.App.4th at 796.

18                 **b.**      **Substantive Unconscionability**

19                   **(1)**     **Minimal Discovery**

20         In California, an arbitration must provide for more than minimal discovery, which means

21   discovery that is sufficiently adequate to litigate the claim at issue.  See Armendariz, 24 Cal.4th at

22   102, 106.  Unfettered discovery, or discovery as broad as that provided in court, is not required, so

23   long as minimum standards of fairness apply so that employees may vindicate their public rights.

24   Baxter v. Genworth N. Am. Corp., 16 Cal.App.5th 713, 722, 727 (2017).

25         Here, Sanchez contends that the JCR's limit discovery to an exchange of information and

26   one deposition.  This is partially correct.  The JCR's require an exchange of information and

27   supplementation, and do prescribe one deposition.  See JCR 17(a), (b).  However,  the "necessity

28   of additional depositions shall be determined by the Arbitrator based upon the reasonable need for

the requested information, the availability of other discovery options and the burdensomeness of the request on the opposing Parties and the witness." JCR 17(b). Thus, there is the possibility of other depositions, though no apparent right to more than one.

JCR 17(b) is nearly identical to JER 17(b), the only material difference for purposes of this motion appears to be that JER provides that the parties may agree to *at least* one deposition, whereas JCR expressly provides for one deposition as a matter of right. Courts have found that JER 17(b) provides for adequate discovery for purposes of *Armendariz*. See Pope v. Sonatype, Inc., 2015 U.S. Dist. LEXIS 60815, *12-*13 (N.D. Cal. May 8, 2015); Saline v. Northrop Grumman Corp., 2009 U.S. Dist. LEXIS 138960, *17-*18 (C.D. Cal. Feb. 9, 2009); Sandoval v. Medway Plastics Corp., 2014 Cal.App. Unpub. LEXIS 8953, *12-*13 (2014); Bennett v. Peters, 2004 Cal.App. Unpub. LEXIS 5931, *8-*9 (2004). Given the acceptance of JER 17 as providing adequate discovery under *Armendariz*, the issue is whether the limitation on depositions renders JCR 17(b)'s discovery inadequate.

In *Affholter v. Franklin Cnty Water Dist.*, 2008 U.S. Dist. LEXIS 106254, *52-*56 (E.D. Cal. Dec. 23, 2008), the Court held that JCR 17(b) did not represent an unconscionable limit on discovery. Of particular import to the *Affholter* court was that the standard for obtaining additional depositions was "reasonable need," which is not an onerous showing. See id. at *56.

Similarly, in *Dotson v. Amgen, Inc.*, 181 Cal.App.4th 975, 982 (2010), the court addressed a contractual provision that limited discovery to one deposition of "natural persons" and all experts, but the arbitrator could order additional discovery "upon a showing of need." *Dotson* found that the limitation was not unconscionable. As part of its analysis, *Dotson* concluded that the fact the arbitrator was given the discretion to authorize additional discovery was not improper. Courts "assume that the arbitrator will operate in a reasonable manner in conformity with the law." Id. at 984-85. Further, *Dotson* relied on *Roman v. Superior Court*, 172 Cal.App.4th 1462 (2009), a decision that had upheld a rule of the American Arbitration Association rule that gave the arbitrator the ability to authorize additional discovery. As part of its discussion of *Roman*, *Dotson* noted that "JAMS Rule 17(b)" limited parties to one deposition as of right but permitted additional depositions upon request to the arbitrator. Id. at 983 n.3. *Dotson*'s notation of what amounts to

JCR 17(b), as well as its adoption of the rule that an arbitrator will be presumed to act in a reasonable manner and in conformity with the law, indicate that JCR 17(b) is not unconscionable.

In *Baxter v. Genworth N. Am. Corp.*, 16 Cal.App.5th 713, 728-29 (2017), the Court of Appeal found that an arbitration provided for additional discovery upon a showing of "good and sufficient cause" was unconscionable. *Baxter* emphasized that the plaintiff in that case had specifically demonstrated that the "default discovery" would be inadequate, that the "good and sufficient cause" standard was a greater showing than the one of "need" upheld in *Dotson*, and the "good and sufficient cause" standard was vague because inclusion of the term "sufficient" suggested that "good cause" alone would not support additional discovery. See id. at 729. Here, Sanchez has not identified how many depositions are necessary, or explained how JCR 17(b) is inadequate in the same manner as *Baxter*, although given the nature of the allegations, it is safe to assume that more than one deposition is needed. See id. at 727 ("Employment disputes are factually complex, and their outcomes 'are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice.'") (quoting Fitz v. NCR Corp., 118 Cal.App.4th 702, 717 (2004)). Nevertheless, the standard for additional discovery in this case is "reasonable need." That standard is lower than a "good and sufficient cause" standard and is in accord with the standard upheld in *Dotson*.

Considering *Affholter*, *Dotson*, and *Baxter*, because the standard for obtaining additional discovery is not onerous, and because it is presumed that the arbitrator will act reasonably and in accordance with the law, the Court concludes that Sanchez has not demonstrated that JCR 17(b) is a substantively unconscionable limitation on discovery.

### (2)    Judicial Review

Sanchez argues that *Armendariz* held that an arbitration agreement that attempts to deny employees the right to judicial review of arbitration decisions is unconscionable. Contrary to *Armendariz*, Sanchez argues the Agreement states that the arbitrator's decision is final.

The California Supreme Court has recognized that, because "arbitral finality is a core component" of arbitration agreements, courts generally "cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial

1  injustice to the parties." <u>Richey v. AutoNation, Inc.</u>, 60 Cal. 4th 909, 916 (2015).  Indeed, "parties

2  to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final."

3  <u>Moncharsh v. Heily & Blase</u>, 3 Cal. 4th 1, 9 (1992).  However, the California Arbitration Act and

4  the FAA both provide for a narrow review of an arbitrator's decision.  <u>Richey</u>, 60 Cal.4th at 916.

5      Here, Sanchez has simply cited one provision of the Agreement that states that the

6  arbitrator's decision is final.  That provision appears to be nothing more than a recognition of the

7  general rule of finality, as explained by *Richey* and *Moncharsh*.  Sanchez has not shown how this

8  provision of the Agreement is contrary to the general rules in *Richey* and *Moncharsh*.  Moreover,

9  as quoted above, the Agreement expressly invokes the FAA, and thus, includes the judicial review

10  provided by the FAA.  While review under the FAA is limited, there is still review.  <u>See</u> 9 U.S.C.

11  §§ 10, 11.  Sanchez cites no case law for the proposition that the review provided by the FAA is

12  unconscionable.  Because the only identified clause merely states the accepted rule of finality, and

13  because the Agreement includes the limited review provided by the FAA, there is no basis to find

14  this aspect of the Agreement unconscionable.  <u>See</u> <u>Richey</u>, 60 Cal.4th at 916; <u>Moncharsh</u>, 3

15  Cal.4th at 9.

16                    (3)    <u>Arbitration Fees</u>

17      In California, an employment arbitration agreement "cannot generally require the

18  employee to bear any type of expense that the employee would not be required to bear if he or she

19  were free to bring the action in court."  <u>Poublon</u>, 846 F.3d at 1267-68; <u>Sanchez</u>, 61 Cal.4th at 918;

20  <u>Armendariz</u>, 24 Cal.4th at 110-11.

21      Sanchez argues that the JCR's require him to pay a filing fee of $1,200.00, a pro rata share

22  of mediator fees (which could be thousands of dollars), and 12% case management fee.  These

23  fees and potential fees are substantially more than would be required to proceed in court and thus,

24  is unconscionable.  HFS contends that a $400 filing fee is all that Sanchez would be required to

25  pay, per the JER's.

26      As explained above, the Court has already determined that the JCR's, not the JER's, apply.

27  Apart from that determination, however, the Agreement contains language that specifically

28  addresses arbitration fees.  "The fees and expenses of the arbitration shall be borne by the parties,

                                            10

under the schedule in the Comprehensive Rules, unless otherwise awarded by the arbitrator in the final, written decision." Centeno Dec. Ex. 1 at p.8. Thus, the express language of the Agreement is again clearly and directly contrary to HFS's position that the JER fees will apply. It is unreasonable to ignore this clear language. Therefore, per the express language of the Agreement (and the Court's prior determination concerning the JCR's), the fees under the JCR's apply.

Neither party disputes any fee figure utilized in the briefing. Importantly, HFS does not dispute that the fees under the JCR are not as represented by Sanchez. Rather, HFS incorrectly and contrary to the clear and express language of the Agreement stated that a $400 fee under the JER's would apply to Sanchez. Because the parties do not dispute the actual percentages and dollar figures, the Court will accept the fee representations of counsel. Therefore, the Agreement and the JCR's would require Sanchez to pay a $1,200 filing fee, a pro rata share of the arbitrator's fee which easily could run into the thousands of dollars, and a 12% case management fee. The arbitrator's fee and the case management fee are fees that are not part of a court proceeding, and the $1,200 filing fee is three times what a court filing fee would be if the case proceeds in court. Therefore, the fees under the JCR are substantially greater than the fees that Sanchez would have to pay in court, and the Agreement's fee provision is substantially substantively unconscionable. See Poublon, 846 F.3d at 1267-68; Sanchez, 61 Cal.4th at 918; Armendariz, 24 Cal.4th at 110-11.

(4)    Carved Out Claims

Sanchez argues that the Agreement reserves the right of HFS to seek injunctive relief in court, but that the Agreement does not give him such a right. Sanchez also cites cases in which courts have criticized an arbitration clause for requiring an employee to arbitrate claims that the employee is most likely to make, but allowing the employer to file a lawsuit or arbitrate claims that the employer is most likely to assert. Quoting part of the relevant clause, HFS argues that the Agreement permits both parties to seek injunctive relief.

The Agreement in relevant part reads: "Nothing shall preclude a party from seeking temporary injunctive relief, but said application shall only be brought in federal district court in the District of New Jersey, or if diversity or subject-matter jurisdiction is lacking, in a New Jersey State Court of competent jurisdiction." The clear language of this clause does not preclude any

11

`

1  party from seeking temporary injunctive relief, and the clause does not limit its application to any

2  particular type of claim or issue.  If either party needs to obtain temporary injunctive relief, that

3  party may go to court.[3]  That is, Sanchez and HFS are permitted to seek temporary injunctive

4  relief in court.  Sanchez does not explain how this clause is one-sided or how it is unconscionable.

5  Cf. Baltazar, 62 Cal.4t h at 1246-47 (holding that an injunctive relief clause was not

6  unconscionable where the clause confirmed both parties' right to obtain preliminary injunctive

7  relief, consistent with Cal. Code Civ. P. § 1281.8, and noting that the clause conferred no

8  advantage on the drafting party that would be otherwise unavailable in litigation).  Thus, no claims

9  are carved out of arbitration.  Sanchez has not shown that the temporary injunction clause is

10  substantively unconscionable.

11                           (5)        Unexpected Forum

12         Sanchez argues that arbitration in any place other than Fresno, California is not part of his

13  reasonable expectations and would create an unreasonable financial burden.  Sanchez indicates

14  that HFS has threatened to file for arbitration in Los Angeles, California, knowing that he cannot

15  afford to litigate in Los Angeles.  Sanchez has included an e-mail that does indicate that HFS has

16  threatened to arbitrate in Los Angeles if he did not agree to arbitration and the payment of the

17  $400 JAMS filing fee.  See Doc. No. 7-3 at ECF p.80.  The e-mail explains that Los Angeles is

18  where HFS's counsel and unidentified "key witnesses" reside.  See id.  The e-mail also explains

19  that HFS is willing to arbitrate in Fresno if a motion to compel is not necessary.  See id.

20         As quoted above, the Agreement provides in essence that the location for any arbitration of

21  disputes with California employees will be "California," no specific city or county is identified.

22

23  [3] The parties do not address the entirety of the "injunction clause," and Sanchez's argument is limited to a lack of
    mutuality.  There is no challenge to the portion of the clause that purports to set venue for obtaining temporary
24  injunctive relief in New Jersey.  This may be because of operation of a separate venue provision.  The Agreement
    provides that arbitration will occur in New Jersey.  However, if the employee works in California, the Agreement
25  provides that the employee "consents to personal jurisdiction in California, the application of California law, and to
    California as the forum for any disputes arising in California."  The last portion of this venue provision, naming
26  California "as the forum for any disputes arising in California," is arguably broad enough to cover disputes over
    temporary injunctive relief, meaning that a California employee would arbitrate and attempt to obtain temporary
27  injunctive relief in California, as opposed to New Jersey.  If the Agreement intends that even a California employee
    must obtain temporary injunctive relief in New Jersey, despite arbitrating in California, then there would a significant
28  unconscionability concern.  However, since the parties have not addressed the "injunction venue clause," the Court
    expresses no opinion as to the substantive unconscionability of that clause.

Per the Agreement, both Fresno (the location where Sanchez worked) and Los Angeles (the location undisclosed "key witnesses" reside), both appear to be proper. The cases cited by Sanchez included venue provisions that were unconscionable in that the clauses required consumers to arbitrate their claims in states that were a significant distance from California. Sanchez cites no cases where venue provisions were held unconscionable and involved distances comparable to the distance between Fresno and Los Angeles. Sanchez has not shown that the Agreement's arbitration general California venue provision is unconscionable.

     c.  <u>Enforcement</u>

  As an employment contract of adhesion, the Agreement suffers from procedural unconscionability. The procedural unconscionability is amplified by the substantively unconscionable JCR provision for the payment of fees by Sanchez that are well in excess of the fees he would pay by proceeding in court.

  If a court concludes that a contract contains one or more unconscionable clauses, it may: (1) refuse to enforce a contract that was "unconscionable at the time it was made," (2) "enforce the remainder of the contract without the unconscionable clause," or (3) "limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a); <u>Poublon</u>, 846 F.3d at 1272. "A court may 'refuse to enforce the entire agreement' only when it is permeated by unconscionability." <u>Poublon</u>, 846 F.3d at 1272 (quoting <u>Armendariz</u>, 24 Cal.4th at 122). "If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." <u>Id.</u> (quoting <u>Marathon Entm't, Inc. v. Blasi</u>, 42 Cal.4th 974, 996 (2008)). Courts consider whether the agreement contains more than one objectionable term (which may show a systematic effort to impose arbitration on an employee), whether the central purpose of the contract is tainted with illegality, and whether there is no single provision that the court can strike or restrict in order to remove the unconscionable taint from the agreement. <u>Id.</u> at 1273.

  The history of this case prior to the motion to compel arbitration is important. From the submissions of the parties, HFS informed Sanchez's counsel of the Agreement in August 2017.

`

See Campbell Dec. Ex. 3.  Sanchez filed suit in the Fresno County Superior Court on September 1, 2017, and HFS removed to this Court on September 21, 2017.  On October 17, 2017, HFS sent Sanchez a copy of the Agreement and asked if Sanchez was willing to stipulate to arbitration.  See id. at Ex. 4.  On October 26, 2017, HFS sent Sanchez a draft stipulation regarding arbitration.  See id. at Ex. 5.  Between October 26 and October 27, Sanchez suggested changes to the stipulation. See id.; Bryant Dec. Ex. B.  Specifically, Sanchez modified the stipulation to state that the JER's would apply, the arbitration would occur in Fresno, and that HFS would pay all filing fees.  See Bryant Dec. Ex. B.  The stipulation also requested that this Court stay the proceedings and retain jurisdiction over the case.  See id.  HFS agreed to arbitrate in Fresno, and appears to have agreed to the JER's, but would not agree to pay the $400 filing fee.  See Campbell Dec. Ex. 5.  Sanchez took the position that he could not be forced to pay more than would be required in court, and that he already paid a $400 filing fee.  See id.  HFS took the position that filing in state court was a choice Sanchez made, despite being informed of the Agreement.  See id.  HFS then stated that if Sanchez did not agree to pay the $400 arbitration fee, it would file a motion to compel arbitration and then seek to have the arbitration conducted in Los Angeles.  See id.  From this history, the Court gleans several important conclusions regarding enforcement of the Agreement.

First, Sanchez does not appear to have any objection to arbitrating with JAMS under the JER's.  The draft that Sanchez returned to HFS specifically identifies the JER's as the rules that would apply.  Moreover, HFS's motion makes clear that it too wishes to proceed under the JER's, or at least officially takes the position that the JER's will apply.  Therefore, both parties are willing to arbitrate under the JER's.  Application of the JER's would eliminate the improper JCR fee provisions and limit Sanchez's expenditure to a $400 filing fee.  If reference to the JCR's are stricken, then there is no enforceable agreement by the parties for a set of rules other than the JER's, which is the default set of JAMS rules that will be applied in employment related cases, and there is no dispute that HFS would pay all fees and costs except the $400 fee.  See JER 1(b). Moreover, the objectionable fee provision of the Agreement could further be restricted by requiring HFS to pay all fees and costs that would be in excess of the expenses that would be required of Sanchez if he proceeded in court.  See Poublon, 846 F.3d at 1267-68; Sanchez, 61

14

Cal.4th at 918; <u>Armendariz</u>, 24 Cal.4th at 110-11.  Striking references to the JCR and limiting Sanchez's responsibility for fees would eliminate the unconscionable provisions of the Agreement and meet the lawful object of the Agreement, to arbitrate employment disputes.[4]

Second, no objection was identified to language in the draft stipulation for the Court to stay this case and retain jurisdiction over the matter.  Where, as here, all claims are subject to arbitration, the Court has the discretion to either stay the case or dismiss it outright.  <u>Johnmohammadi v. Bloomingdales, Inc.</u>, 755 F.3d 1072, 1074 (9th Cir. 2014).  Sanchez has requested that the Court deny the motion to compel, and HFS asks the Court to either dismiss or stay the matter.  Given the relevant provision of the draft stipulation, on balance the parties collectively would prefer the Court to stay rather than dismiss the case.

Finally, both parties are willing to arbitrate in Fresno.  HFS expressly told Sanchez that it was willing to do so in the 9:27 a.m. e-mail on October 27, 2017.  <u>See</u> Campbell Dec. Ex. 5.  The only reason that the specter of Los Angeles has entered this case is because HFS threatened to attempt to arbitrate there if Sanchez refused to pay the $400 arbitration filing fee.  <u>See id.</u> at 10:20 a.m. e-mail of October 27, 2017.  In other words, HFS really has no objection to arbitrating in Fresno, its reference to Los Angeles is merely a litigation tactic.  The Court can alleviate Sanchez's fears of arbitration in Los Angeles, and give effect to a location that is demonstrably acceptable to both parties, by staying this case and ordering arbitration to occur within the jurisdiction of the Court, i.e. within the Fresno Division of the Eastern District of California, in aide of the Court's jurisdiction.  This is also consistent with the terms of the Agreement because no particular venue within California is mandated.

In light of the above, the Court will strike references to the JCR's, restrict the Agreement's fee provision, compel arbitration to occur within the Eastern District of California – Fresno Division, and stay this case pending completion of the arbitration.

---

[4] The Court understands that the parties disputed payment of the $400 filing fee.  However, the briefing of the parties has not addressed the issue.  Neither side has cited authority that deals with the effect of a plaintiff's choice to file a lawsuit instead of arbitration, when portions of the arbitration agreement are limited or stricken as unconscionable.  In the absence of authority from the parties, the Court will not order HFS to pay the filing fee.  Consistent with Rule 11, if Sanchez has a good faith argument that HFS should pay the $400 arbitration filing fee, he may file a motion for reconsideration that is supported by citation to relevant authority.

# ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.    Defendant's motion to compel arbitration is GRANTED;

2.    All references to the JAMS Comprehensive Rules in the Agreement are STRICKEN;

3.    In addition to the deletion of the reference to the Comprehensive Rules, the following clause of the Agreement may not be interpreted to mean that Sanchez will pay any type of expense that would be in excess of the expenses that would be required of Sanchez if he proceeded in court: "The fees and expenses of the arbitration shall be borne by the parties, under the schedule in the Comprehensive Rules, unless otherwise awarded by the arbitrator in the final, written decision."

4.    This case is STAYED pending arbitration;

5.    Within thirty days of service of this order, the parties may initiate arbitration within the Eastern District of California – Fresno Division, and shall file a notice of filing arbitration with the Court within thirty-five days of service of this order;

6.    Within fourteen (14) days of completion of arbitration, the parties will file a notice of completion of arbitration and a status report that addresses how to proceed with the case, including the lifting of the stay; and

7.    During the pendency of the stay, the parties will file joint status reports with the Court every sixty (60) days.

IT IS SO ORDERED.

Dated:   March 20, 2018         _____

                                                SENIOR  DISTRICT  JUDGE